Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (VI)

| ARNALDO MIRANDA AVILÉS<br><br>Apelante<br><br>V.<br><br>AE MEDICAL TECHNOLOGIES, INC.<br><br>Apelado | KLAN202301088<br><br><br><br>consolidado | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso núm.: BY2022CV03430<br><br>Sobre: Acción civil, Ley de Corporaciones, Acción Derivativa, Daños y Perjuicios |
| ARNALDO MIRANDA AVILÉS<br><br>Peticionario<br><br>V.<br><br>AE MEDICAL TECHNOLOGIES, INC.<br><br>Recurrido | KLCE202301373 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso núm.: BY2022CV03430<br><br>Sobre: Acción civil, Ley de Corporaciones, Acción Derivativa, Daños y Perjuicios |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres y la jueza Rivera Pérez.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2024.

Comparece ante este tribunal apelativo el Sr. Arnaldo Miranda Avilés (el señor Arnaldo Miranda o el apelante-peticionario) mediante los recursos de epígrafe y nos solicita que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (el TPI), el 11 de octubre de 2023, archivada en autos el 13 de octubre siguiente. Mediante este dictamen, el foro

primario declaró *Ha Lugar* a la solicitud de interdicto preliminar y permanente instada por las partes codemandadas AE Medical Technologies, Inc. y el Sr. Elmer Miranda Avilés. Además, declaró *Con Lugar* a la moción de desestimación de la demanda solicitada en corte abierta.

Por otro lado, el apelante-peticionario también nos solicita que revoquemos la *Resolución* dictada por el TPI, el 3 de noviembre de 2023, notificada el 6 del mismo mes y año. En dicho dictamen, el foro *a quo* declaró *Ha Lugar* a los memorandos de costas de las partes codemandadas.

Por los fundamentos que expondremos a continuación, revocamos la *Sentencia Parcial* apelada. En cuanto al auto de *certiorari,* expedimos el recurso y revocamos la orden recurrida.

**I.**

El 6 de julio del 2022, el señor Arnaldo Miranda presentó una *Demanda* y solicitud de remedios provisionales, contra el Sr. Elmer Miranda Avilés y AE Medical Technologies, Inc. (en conjunto los apelados-recurridos), a tenor con el Artículo 7.15 de la Ley General de Corporaciones de 2009, 14 LPRA sec. 3655, al igual que los Artículos 675 a 689 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521-3566, y la Regla 57 de las de Procedimiento Civil, 32 LPRA Ap. V, R.57.

El Sr. Arnaldo Miranda alegó ser accionista del 50% de las acciones de AE Medical Technologies, Inc. (AEM) y que el Sr. Elmer Miranda Avilés (señor Elmer Miranda) es director oficial y accionista del otro 50%. En apretada síntesis, adujo que el señor Elmer Miranda ha violentado su deber de lealtad y fiducia poniendo a la corporación en inminente peligro. Arguyó que los actos realizados por este son suficientes para descorrer el velo corporativo e imponerle responsabilidad personal, ya que la corporación es un *alter ego* para encubrir las actividades ilícitas de dicho accionista.

En consecuencia, solicitó: (a) la remoción del señor Elmer Miranda como director u oficial de la corporación; (b) $2 millones a la corporación por daños; (c) $2 millones por lucro cesante; (d) $2 millones a la corporación por la pérdida de oportunidades de negocio; y (e) $500,000 por sufrimientos y angustias mentales. Además, peticionó el traspaso de un vehículo de motor, Mazda CX-5 Sport Blanco 2018, Tablilla JB0777. En la misma demanda, se solicitó la expedición de un *interdicto preliminar y permanente* para que se destituya al señor Elmer Miranda de sus funciones como director y oficial de la corporación; y en su defecto, se designe un síndico. Asimismo, requirió se ordene una auditoría de los últimos tres (3) años.

El 19 de julio de 2022, el señor Elmer Miranda presentó una *Reconvención* alegando que desde el 27 de julio del 2021 es el presidente y tesorero de AEM, más accionista del 50%. Adujo que el señor Arnaldo Miranda, mientras fungió como presidente y tesorero de AEM, incurrió en actos ilegales y contrarios a su responsabilidad como directivo perjudicando sus derechos propietarios como accionista de la empresa. Añadió que este firmó ilegalmente y/o falsificó la firma de la Secretaria de AEM en una *Resolución Corporativa* del 10 de agosto del 2018. También alegó que el señor Arnaldo Miranda notificó, mediante carta del 27 de julio de 2021, que cesaría de laborar en la corporación. Arguyó que este se ha negado a cooperar para que se puedan realizar los cambios y traspasos requeridos en el Departamento de Estado. En fin, indicó que este ha infringido su deber de fiducia. Por lo cual, solicitó ser compensado en $5 millones por lucro cesante, pérdida de negocios y daños a la imagen, $1 millón por los sufrimientos y daños morales, más daños punitivos, costas, gastos, intereses legales y honorarios de abogado por $25,000.

En cuanto el alegado *injunction* en la reconvención se solicitó y citamos:

> Se abstenga de continuar atacando y compitiendo y haciéndole daño a la empresa y la imagen de la empresa y al Reconvencionista; se abstenga de intentar destituir al Reconvencionista con argumentos sordos, frívolos y de mala fe; se abstenga de insistir en recuperar ganancias de la empresa a la que desfalcó y afectó económicamente propiciando con ello los daños económicos y de lucro cesante al Reconvencionista; se abstenga y detenga continuar defraudando a la compañía y sus accionistas, exponiéndola a demandas y acciones de terceros; y detenga su intención de desangrar la empresa, mal utilizando sus fondos al obligar a la empresa a comparecer frívolamente a este pleito, entre otros.

Ese mismo día, 19 de julio, el señor Elmer Miranda instó una moción solicitando la desestimación de la demanda y que se dejara sin efecto la vista de interdicto. En apretada síntesis, alegó que la demanda contiene señalamientos de fraude a base de meras especulaciones y por medio de alegaciones insuficientes que no contienen hechos específicos que justifiquen la concesión de los remedios.

El 2 de agosto, el señor Elmer Miranda presentó su contestación a la demanda negando los hechos esenciales. En cuanto al remedio extraordinario del *injunction*, adujo que no existe base legal corporativa ni procesal para que proceda el mismo por lo que debe ser desestimado *ab initio*. De igual manera, y ese mismo día, AEM contestó la demanda negando los hechos esenciales. También solicitó la desestimación de la demanda y la imposición de honorarios de abogado por temeridad. En documento aparte, instó una *Reconvención* imputándole al señor Arnaldo Miranda una conducta fraudulenta, de mala fe, desleal a la fiducia, mala administración y competencia desleal, socavando los suplidores y clientes a AEM. En síntesis, solicitó ser compensado por los daños ocasionados en $2,083,834.

El 2 de agosto de 2022, AEM presentó su oposición al remedio interdictal solicitado por el apelante-peticionario. En resumen,

indicó que "la medida provisional solicitada es totalmente improcedente en derecho por adolecer de los requisitos de ley, es frívola y que, de emitirse, constituiría una seria amenaza a AE, con la evidente consecuencia de exponerle a daños adicionales mayores, económicos y de imagen irreparables."[1] En cambio, instó una moción solicitando remedios interdictales en contra del señor Arnaldo Miranda. En esta, solicitó y citamos:[2]

> a. se le prohíba traspasar, vender, permutar, dar en garantía o d cualquier otra forma, los bienes, derechos y acciones que posea en AE;
> b. cese y desista de continuar compitiendo con AE;
> c. cese y desista de continuar afectando la imagen corporativa de AE;
> d. para que consigne todas las ganancias devengadas de la actividad de competencia que ha llevado a cabo en contra de AE y sobre futuras ganancias recibidas de las líneas de suplidores: (1) Masimo (2) Milesman (3) y de Venta de Accesorios de equipos médicos y/o cualquier otro que haya sido cliente o AE le haya servido de distribuidor;
> e. coopere para que se pueda proveer la información requerida actualizada en el Departamento de Estado.

El TPI señaló vista de interdicto preliminar y permanente **de forma consolidada** para atender **las solicitudes de ambas partes**. La vista se celebró durante los días 7 y 9 de noviembre de 2022.

La prueba presentada por el apelante-peticionario consistió únicamente en su propio testimonio.[3] Culminado dicho testimonio el Lcdo. Rubén T. Nigaglioni Mignucci, representante legal de señor Elmer Miranda, solicitó un *non suit* y alegó que el apelante-peticionario **no probó nada**.[4] El Lcdo. Ricardo Díaz Soto, abogado del apelante-peticionario, señaló que el señor Arnaldo Miranda es un accionista que no se le ha permitido participar y que el Artículo 7.16 de la Ley de Corporaciones permite que un tribunal pueda nombrar un administrador judicial como remedio para cada una de las situaciones dispuestas en la ley. El TPI se reservó su dictamen

---

[1] Véase el Apéndice del Recurso, a la pág. 351.
[2] *Íd.*, a las págs. 355-356.
[3] Véase la TPO del 7 de noviembre, a las págs. 7-12.
[4] *Íd.*, a la pág. 12, líneas, 4-12.

por lo que prosiguió el contrainterrogatorio del señor Arnaldo Miranda.

Luego, se presentó como testigo de refutación a la Sra. Olga Miranda Avilés, Secretaria de AEM. Esta declaró ser la secretaria corporativa desde que se fundó y que desde 8 de marzo de 2021 trabaja para AEM.[5] Actualmente los oficiales de AEM son el Sr. Elmer Miranda como presidente y tesorero, y ella como secretaria.[6] Durante el redirecto, se le presentó unas minutas de reunión celebradas el 1 de enero de 2015 y 2 de enero de 2020 de las cuales surge que la Junta de Directores estaba compuesta por el Sr. Arnaldo Miranda en calidad de presidente-tesorero, y la Sra. Olga Miranda como secretaria.[7]

Culminada la prueba, <u>el caso quedó sometido por parte del apelante-peticionario</u>. Entonces, el licenciado Nigaglioni Mignucci reiteró su petición de *non suit* y argumentó que el apelante-peticionario no presentó un ápice de evidencia de sustracción de activos ni presentó prueba de daño irreparable. "Bajo estas circunstancias, claramente un *"injunction"* es improcedente con esa ausencia total de prueba."[8]

A dicha solicitud se unió el Lcdo. Walker Merino, representante legal de AEM y entre otros aspectos, argumentó que "ahí queda retratada la deslealtad que él ha tenido para con la empresa, razón adicional por la cual un remedio interdictal no debe proceder."[9] Posteriormente argumentó el licenciado Díaz Soto, y este indicó, que la petición interdictal se estaba haciendo basada en la posición de accionista del señor Arnaldo Miranda. Destacó que el Artículo 7.16 de la Ley de Corporaciones no requiere una prueba adicional de daño irreparable ni la insolvencia de la corporación. "El

---

[5] *Íd.*, a la pág. 66, líneas, 1-4, 10-16.
[6] *Íd.*, a la pág. 71, líneas, 17-21.
[7] *Íd.*, a la pág. 72, líneas 9-20.
[8] *Íd.*, a la pág. 74, líneas 15-17.
[9] *Íd.*, a la pág. 76, líneas 18-20.

término del administrador es cuando las partes, en este caso accionista, hay un empate que no se puede resolver. Aquí son 50 y 50, por definición hay un empate que no se puede resolver."[10] Reiteró que los accionistas tienen **una incapacidad de ponerse de acuerdo** y que el testimonio de su hermana también lo reitera. Por último, destacó que el señor Arnaldo Miranda no ha tenido acceso a los libros corporativos y teme que desaparezcan. Argumentó, además, que este no firmó un acuerdo de no competencia.[11] En cuanto a este aspecto, la Jueza Sara Y. Rosado Morales indicó: "pero hay un deber de fiducia".[12]

El licenciado Diaz Soto argumentó al respecto y en resumen indicó, que "[c]omo accionista, su deber es distinto al deber que él tuviese si fuera un oficial o si fuera un director. Pero en este caso, él simplemente es un accionista y la única obligación que tiene de cumplimiento ... con respecto a la corporación, es a participar de las asambleas y a votar en la selección de los oficiales."[13]

Culminado esos **argumentos**, el TPI declaró *ha lugar* a la petición de *non suit* y determinó "[l]o único que entonces se ordenará de manera prospectiva es que se coordine para los libros corporativos que el señor los pueda examinar. [...]"[14] Acto seguido, el TPI preguntó a los representantes legales si queda algún asunto pendiente, a lo que el licenciado Díaz Soto respondió que ninguno de su parte. Sin embargo, el Lcdo. Walker Merino indicó que **estaba preparado para comenzar el desfile de prueba en cuanto la reconvención**.[15] Así entonces, comenzó el desfile de la prueba con el testimonio del señor Elmer Miranda el cual fue contrainterrogado por el licenciado Díaz Soto. Finalizado el testimonio el TPI concedió

---

[10] *Íd.*, a la pág. 77, líneas 21-24.
[11] *Íd.*, a la pág. 79, líneas 13-15.
[12] *Íd.*, a la pág. 79, línea 16.
[13] *Íd.*, a la pág. 80, líneas 7-13.
[14] *Íd.*, a la pág. 82, líneas 13-17.
[15] *Íd.*, a las págs. 82-83.

a los representantes legales 5 minutos para "hacer alguna argumentación final."[16]

El 11 de octubre de 2023, el TPI dictó el dictamen aquí apelado en el cual declaró *ha lugar* el interdicto preliminar y permanente de los recurridos y dictó cuatro (4) medidas interdictales. Además, expresó que "… se reitera la desestimación de la demanda presentada por Arnaldo Miranda Avilés, según anunciado en corte abierta." Por último, le impuso al apelante-peticionario honorarios por temeridad, sin determinar la cuantía, más el pago de las costas y gastos. Así las cosas, ordenó la continuación de los procedimientos para atender **las reconvenciones** enmendadas que "al desestimar la demanda, se convierten en las demandas originales correspondientes."[17]

Inconforme, el señor Arnaldo Miranda solicitó la reconsideración del dictamen. Al día siguiente, notificada el 3 de noviembre de 2023, el TPI declaró *no ha lugar* el petitorio.

Aún insatisfecho, el apelante-peticionario presentó los recursos de epígrafe imputándole al TPI haber incurrido en los siguientes errores:

**KLAN202301088**

PRIMER ERROR: ERRÓ EL TPI AL DICTAR SU SENTENCIA PARCIAL DEL 13 DE OCTUBRE DE 2023, MEDIANTE LA CUAL DECLARÓ "HA LUGAR" LA SOLICITUD DE INTERDICTO PRELIMINAR Y PERMANENTE DE LA PARTE APELADA Y DESESTIMÓ LA DEMANDA DE LA PARTE APELANTE EN SU TOTALIDAD, EN GRAVE MENOSPRECIO AL ESTADO DE DERECHO VIGENTE SOBRE LOS DERECHOS DE LOS ACCIONISTAS DE UNA CORPORACIÓN Y LA OBLIGACIÓN DE LOS TRIBUNALES DE ACTUAR EN ESAS SITUACIONES, SEGÚN LO RECLAMÓ LA PARTE APELANTE EN SUS ALEGACIONES Y FUE SOSTENIDO POR LA PRUEBA ADMITIDA EN VISTA.

SEGUNDO ERROR: ERRÓ EL TPI AL DECLARAR "NO HA LUGAR" LA SOLICITUD DE DETERMINACIONES DE HECHO Y CONCLUSIONES DE DERECHO ADICIONALES Y RECONSIDERACIÓN PRESENTADA POR LA PARTE APELANTE, TODA VEZ QUE LA SENTENCIA PARCIAL DE 13 DE OCTUBRE DE 2023

---

[16] Véase la TPO del 9 de noviembre de 2022, a la pág. 31, líneas 9-10.
[17] Véase el Apéndice del Recurso, a la pág. 1316.

CONTIENE SERIOS ERRORES Y OMISIONES EN RELACIÓN CON LA PRUEBA ADMITIDA EN LA VISTA AL NO DISPONER DETERMINACIONES DE HECHOS NI CONCLUSIONES DE DERECHO QUE SON MEDULARES PARA LA CORRECTA ADJUDICACIÓN DE LAS CONTROVERSIAS, POR LO QUE LA SENTENCIA PARCIAL DICTADA NO ESTÁ CONFORME CON LA LEY DE CORPORACIONES DE 2009, SEGÚN ENMENDADA.

TERCER ERROR: ERRÓ EL TPI AL DICTAR LA SENTENCIA PARCIAL DE 13 DE OCTUBRE DE 2023 FIRMANDO UN PROYECTO DE SENTENCIA PREPARADO POR LA PARTE APELADA, QUE CONTIENE SERIOS ERRORES SOBRE LO ACONTECIDO EN LA VISTA DEL CASO, EN TOTAL PREJUICIO Y PARCIALIDAD, YA QUE NO REFLEJA EL PROCESO VENTILADO ANTE EL TPI, EN VIOLACIÓN A LAS NORMAS ESTABLECIDAS POR EL TRIBUNAL SUPREMO PARA EL USO DE PROYECTOS DE SENTENCIA.

CUARTO ERROR: ERRÓ EL TPI Y ABUSO DE SU DISCRECIÓN AL DETERMINAR QUE LA PARTE APELANTE INCURRIÓ EN CONDUCTA FRÍVOLA, TEMERARIA Y CONTRARIA A DERECHO Y ORDENAR A LA PARTE APELANTE LA IMPOSICIÓN DEL PAGO DE HONORARIOS DE ABOGADO POR TEMERIDAD, EL PAGO DE COSTAS Y GASTOS DE LOS PROCEDIMIENTOS EN CONTRA DE LOS DIVIDENDOS DE LA PARTE APELANTE CONTRARIO A DERECHO VIGENTE.

### KLCE202301373

ERRÓ EL TPI AL DICTAR LA RESOLUCIÓN DEL 3 DE NOVIEMBRE DE 2023, MEDIANTE LA CUAL DECLARÓ HA LUGAR LOS MEMORANDOS DE COSTAS DE LA PARTE RECURRIDA, HONORARIOS DE ABOGADOS EN GRAVE MENOSPRECIO DEL DERECHO VIGENTE.

Luego de emitidas varias órdenes interlocutorias, el 27 de febrero de 2024 dictamos una *Resolución* dando por estipulada la transcripción de la prueba oral de las tres (3) vistas. El 19 de marzo siguiente, el apelante-peticionario presentó su *Alegato Suplementario …* y el 4 de abril, las apeladas-recurridas presentaron su alegato en oposición. Por tanto, habiendo cumplido las partes, damos por perfeccionados los recursos.

Analizados los escritos de las partes, el expediente apelativo y la transcripción oral de la prueba; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

La Regla 42.2. de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, dispone:

> En todos los pleitos, el tribunal **especificará los hechos probados**, consignará separadamente sus conclusiones de derecho y ordenará que se registre la sentencia que corresponda. **Al conceder o denegar *injunction* interlocutorios, el tribunal, de igual modo, consignará las determinaciones de hechos y conclusiones de derecho que constituyan los fundamentos de su resolución**. Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. Las determinaciones de hechos de un comisionado especial, en tanto y en cuanto el tribunal las adopte, se considerarán como determinaciones de hechos del tribunal. [...]. [Énfasis nuestro]

La doctrina establece que el escrito o documento de una sentencia contiene cuatro partes, a saber: la relación del caso, mediante la cual el juez o jueza hace un breve resumen de los actos procesales de mayor importancia; las determinaciones de hechos; las conclusiones de derecho y la sentencia o parte dispositiva. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, 6ta ed., San Juan, Ed. Lexis Nexis, 2017, págs. 419-420. Esta forma de emitir la sentencia intenta garantizar en cierta medida a las partes que su causa no fue juzgada con arbitrariedad. El juez tiene que considerar la prueba que le fue presentada a la luz de las reglas de evidencia, y luego tiene que especificar el derecho aplicable al caso. <u>Encuadrados los hechos bajo la norma de derecho</u>, se produce la determinación. *Íd.*

Nuestro Tribunal Supremo, en *Andino v. Topeka, Inc.,* 142 DPR 933, 938-939 (1997), explicó la razón para esta norma:

> Las determinaciones de hecho en una sentencia de un tribunal de instancia responden a unos axiomas elementales vinculados con la difícil tarea de hacer justicia, a saber, **los hechos determinan el derecho y para juzgar hay que conocer**. Una sentencia **bien explicada** (tanto en sus hechos como en sus fundamentos de derecho) tiende a reducir el riesgo de arbitrariedad judicial, evita la sensación de elemento misterioso, obliga al juez a penetrar en un proceso reflexivo de inteligencia y promueve un mejor

entendimiento y respeto hacia los tribunales. También, ayuda a los abogados y las partes afectadas a entender el porqué de la decisión. Así, éstos pueden, mejor informados, decidir si la revisan o la aceptan. La experiencia nos enseña que, dentro de ciertos límites, puede discreparse de una apreciación fáctica o que hay espacio para una interpretación jurídica distinta; lo importante es evitar que prevalezcan dictámenes judiciales caprichosos o faltos de fundamentos o hijos de la irreflexión. Más allá de esa instancia, **una sentencia explicada y fundamentada facilita la función revisora del foro apelativo al presentarle el cuadro fáctico claro que nutrió la conciencia judicial del juzgador**. [citas omitidas] Finalmente, promueve la uniformidad, pues la formulación de razones y fundamentos estimula que en la dinámica decisoria los jueces utilicemos criterios análogos para situaciones similares o sustancialmente parecidas. [Énfasis nuestro].

### *Injunction*

El auto de *injunction* está gobernado por la Regla 57 de las de Procedimiento Civil del 2009, 32 LPRA Ap. V, R. 57 y por los Artículos 675 a 689 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521 a 3566. La Regla 57, *supra*, establece tres modalidades de *injunction*, a saber: el *injunction* permanente, el *injunction* preliminar (R. 57.1), y el entredicho provisional (R. 57.2). Consistentemente el Tribunal Supremo ha interpretado que la concesión de una orden de *injunction, injunction* preliminar o entredicho provisional **descansa en la sana discreción del tribunal**, por lo que la decisión del mismo concediendo o denegando la orden no será revocada en apelación a menos que se demuestre que dicho foro abusó de su facultad discrecional. *E.L.A. v. Asoc. de Auditores*, 147 DPR 669 (1999).

En lo aquí pertinente, la Regla 57.3, 32 LPRA Ap. V, R. 57.3, establece los criterios para expedir una orden de entredicho provisional o *injunction* preliminar. Al decidir si expide una orden de entredicho provisional o *injunction* preliminar, el tribunal deberá considerar, entre otros, los siguientes:

> (a) la naturaleza del daño a que está expuesto la parte peticionaria;
> (b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley;

(c) la probabilidad de que la parte promovente prevalezca;

(d) la probabilidad de que la causa se torne en académica;

(e) el impacto sobre el interés público del remedio que se solicita, y

(f) la diligencia y la buena fe con que ha obrado la parte peticionaria.

Por su parte, la Regla 57.5, 32 LPRA Ap. V, R. 57.5, trata la forma y alcance de la orden de entredicho provisional y del *injunction* preliminar o permanente. La regla nos dice que toda orden que concede un entredicho provisional o un *injunction* preliminar o permanente deberá expresar las razones para su expedición. **Será redactada en términos específicos y describirá con detalle razonable, no mediante referencia a la demanda u otro documento, el acto o actos cuya realización se prohíbe**. Por otro lado, la Regla 57.2 inciso (b), 32 LPRA Ap. V, R. 57.2(b), dispone que:

> (b) *Consolidación de la vista con el juicio en sus méritos.* Antes o después de comenzada la vista para considerar una solicitud de injunction preliminar, el tribunal podrá ordenar que el juicio en sus méritos se consolide con dicha vista. Aun cuando no se ordene la consolidación, cualquier evidencia que sea admitida en la vista sobre la solicitud de injunction preliminar y que sea admisible en el juicio en sus méritos, pasará a formar parte del expediente del caso y no tendrá que presentarse nuevamente el día del juicio.
>
> El tribunal, al emitir su resolución, dictará inmediatamente una orden, **especificando los hechos que ha determinado como probados en dicha etapa y ordenando los procedimientos ulteriores que sean justos en el pleito**. [Énfasis nuestro]

**La Ley de Corporaciones de 2009**

En *Herger et al. v. Calidad Vida Vecinal*, 190 DPR 1007 (2014), nuestro alto foro realizó un análisis del derecho de los accionistas a la inspección de los libros corporativos conforme establece el Artículo 7.10 de la Ley de Corporaciones de 2009. Por su pertinencia, citamos a continuación:

> En nuestro ordenamiento se ha reconocido que los accionistas de una corporación tienen un derecho a inspeccionar los libros y cuentas de la misma. Este derecho se fundamenta en que los accionistas, al ser los dueños de la corporación, tienen derecho a proteger sus intereses y a poder investigar cómo se está manejando la corporación cuando sea necesario. Véase, i.e., *Seinfeld v. Verizon Communications, Inc.*, 909 A.2d 117, 119 (Del. 2006). Esto es, "para asegurar

la responsabilidad de la gerencia corporativa a sus accionistas". C.E. Díaz Olivo, *Corporaciones, 2da ed., San Juan, Publicaciones Puertorriqueñas,* 2005, pág. 225.

En la Ley de Corporaciones este derecho está regulado por el Artículo 7.10. 14 LPRA sec. 3650. En específico, este artículo establece el derecho de los accionistas a examinar y fotocopiar el registro de acciones, la relación de accionistas y los demás libros de la corporación **mediante un requerimiento jurado**. [nota al calce omitida] Además, dispone que cuando el accionista procure inspeccionar los libros y cuentas de la corporación debe demostrar que: (1) es un accionista; (2) **ha hecho el requerimiento según exige la ley**; y (3) que la inspección que procura es para un **propósito válido**. Íd. Para efectos de la Ley, propósito válido se define como **un propósito que se relacione razonablemente con el interés de la persona como accionista**. Íd. Asimismo, la Ley establece que, **en caso de que la corporación no permita la inspección solicitada**, el accionista **puede recurrir al Tribunal de Primera Instancia** y éste tiene **jurisdicción exclusiva** para determinar si el accionista tiene derecho o no al examen solicitado. Íd.

.  .  .

En *Domenech* expresamos que, al igual que en nuestro artículo 7.10, supra, el artículo 220 de la Ley de Corporaciones de Delaware requiere un propósito válido y lo define como "a purpose reasonably related to such person's interest as a stockholder". 8 Del. C. sec. 220. A base de lo anterior, determinamos que **el derecho a inspección no es absoluto**, debido a que el propósito válido no puede ser adverso a los intereses de la corporación. *Domenech Fernández*, 187 DPR en la pág. 617, haciendo referencia a *Compaq Computer Corp. v. Horton*, 631 A.2d 1, 4 (Del. 1993). A su vez, indicamos que una vez el solicitante demuestra que es accionista y que tiene un propósito válido, cualquier otro propósito secundario es irrelevante. *Id.* en la pág. 617-618, haciendo referencia a Northwest Industries, Inc. v. B.F. Goodrich Co., 260 A.2d 428, 429 (Del. 1969); *General Time Corp. v. Talley Industries, Inc.*, 240 A.2d 755 (Del. 1968). A esto se le añade que, como resultado, si la corporación se opone al requerimiento demostrando que el accionista tiene un propósito ulterior impropio, eso no es suficiente. *Pershing Square, L.P. v. Ceridian Corp.*, 923 A.2d 810, 817 (Del. Ch. 2007). En estos casos, la corporación debe demostrar que **el propósito alegado es un pretexto y que el verdadero propósito no es válido** según la Ley de Corporaciones. *Id.*

También expresamos que constituyen propósitos válidos: determinar el valor de las acciones de una corporación, "particularmente en las corporaciones de individuos, cuyas acciones no están sujetas a venta pública"; determinar si una corporación tiene la capacidad de pagar dividendos; y calcular bonos de producción. *Domenech Fernández*, 187 DPR en las págs. 618, 623 haciendo referencia a *CM & M Group, Inc. v. Carroll*, 453 A.2d 788, 792-793 (Del. 1982); *Helmsman's Management Services, Inc. v. A & S Consultants Inc.*, 525 A.2d 160, 165 (Del. Ch. 1987).

Por su parte, la existencia de un propósito válido o la falta del mismo **es una cuestión de hecho y se determina caso a caso**. *CM & M Group, Inc. v. Carroll*, 453 A.2d 788, 792 (Del. 1982); *Helmsman Management*

*Services, Inc. v. A & S Consultants, Inc.*, 525 A.2d 160, 164 (Del. Ch. 1987).

Cuando se solicita la inspección de los libros y cuentas, **el accionista tiene el peso de la prueba** de demostrar que el propósito que alega es válido, por lo tanto, "[m]erely stating that one has a proper purpose, however, is necessarily insufficient". *Melzer v. CNET Networks, Inc.*, 934 A.2d 912, 917 (Del. Ch. 2007). Para ilustrar lo anterior, cuando se alega como propósito válido investigar transacciones impropias o mala administración, el Tribunal Supremo de Delaware ha requerido que el accionista demuestre, mediante preponderancia de la prueba, que **tiene una base razonable para creer que la corporación está siendo mal administrada**. [...]

.   .   .

En estos casos se exige alguna prueba que coloque al tribunal en posición de determinar si existe o no un propósito válido, manteniendo así un balance entre el derecho de los accionistas y los mejores intereses de la corporación.

Otro propósito que se ha considerado válido es la clarificación de discrepancias en los estados financieros de la corporación. *State ex rel. Miller v. Loft, Inc.*, 156 A. 170 (Del. 1931). Véase, además, Díaz Olivo, supra, pág. 227. Por otro lado, se ha resuelto que **no son propósitos válidos la mera curiosidad o iniciar un litigio para hostigar a la corporación**. *Compaq Computer Corp.*, 631 A.2d 1, 5 (Del. 1993). Véase, además, Díaz Olivo, *supra*, pág. 227.

Ahora bien, una vez el accionista demuestra que tiene un propósito válido, eso no significa que tiene derecho a ver todos los libros y cuentas de la corporación. Éste podrá inspeccionar los documentos que sean necesarios para lograr su propósito. Es decir, [...]". [Énfasis nuestro]. *Íd.,* a las págs. 1015-1020.

El Artículo 7.16 de la Ley núm. 164-2009, 14 LPRA sec. 3856(a)(2), dispone lo referente al <u>nombramiento de un administrador judicial o síndico para una corporación</u>. Así pues, a petición de cualquier accionista, el Tribunal de Primera Instancia, Sala Superior podrá nombrar uno o varios administradores judiciales, o síndicos, si es que la corporación está insolvente, cuando:

[...] los asuntos de la corporación estén sufriendo daños irreparables o estén bajo amenaza de sufrir los mismos, debido al empate entre los directores en cuanto a la administración de los asuntos de la corporación, de que no se pudiera obtener la votación necesaria para actuar de parte de la junta de directores y los accionistas no pueden poner fin al empate, o [...] [Énfasis nuestro]

**Apreciación de la prueba testifical y documental**

Según se conoce, en aquellos casos en los que, a través de un recurso apelativo, se impute al Tribunal de Primera Instancia la

comisión de algún error relacionado con la suficiencia de la prueba testifical o con la apreciación de la prueba, la parte apelante tiene la obligación de presentar una exposición narrativa de la prueba para colocar a esta segunda instancia judicial en posición de revisar la sentencia apelada. Regla 19(a), inciso (a), del *Reglamento del Tribunal de Apelaciones*, 4 A LPRA Ap. XXII–B*; Álvarez v. Rivera*, 165 DPR 1, 13 (2005).

En ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendrán con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el Tribunal de Primera Instancia. *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR 799, 811 (2009). Esta deferencia descansa en que el juez ante quien declaran los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones y todo su comportamiento mientras declaran; factores que van formando gradualmente en su conciencia la convicción sobre la verdad de lo declarado. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 68 (2009). Aun en aquellos casos en los que surjan conflictos entre la prueba, corresponde al juzgador de los hechos dirimirlos. *Flores v. Soc. de Gananciales*, 146 DPR 45, 50 (1998).

**III.**

Como señalamos, en el presente recurso el apelante-peticionario señaló que la sentencia apelada es contraria a la Ley de Corporaciones y al derecho que le asiste como accionista. Asimismo, indicó que el foro apelado erró al conceder honorarios por temeridad, el pago de costas y los gastos del procedimiento en contra de sus dividendos. Por último, imputó al TPI haber firmado un proyecto de sentencia que contiene serios errores sobre lo acontecido en la vista del caso.

En el presente caso, surge del trámite procesal y de los autos del caso, que el TPI consolidó las vistas de interdicto preliminar y el permanente.[18] Conforme adelantamos en el acápite anterior, en nuestro ordenamiento jurídico el *injunction* está regulado por la Regla 57 de las de Procedimiento Civil, 32 LPRA secs. 3521 al 3533, y por los Artículos 675 al 687 del Código de Enjuiciamiento Civil, *supra*, respectivamente. La Regla 57.5, *supra, requiere que el TPI redacte la orden en términos específicos y tiene que describir con detalle, no mediante referencia a documentos, el acto o actos cuya realización se prohíbe.* Además, y aunque la concesión o no del *injunction* descansa en el ejercicio de la sana discreción del tribunal, en el presente caso el foro apelado se alejó del procedimiento antes expuesto y condujo un procedimiento un tanto confuso tanto para esta *Curia* como para el apelante-peticionario. Ello pues, emitió una *Sentencia Parcial*, la cual es claramente un proyecto de sentencia presentado por la parte apelada-recurrida y la forma en que la que está redactada, así como la referencia a los exhibits, nos impide ejercer nuestra función revisora.

Luego de una detallada lectura de la TPO, este tribunal intermedio quedó convencido que el proyecto no refleja claramente lo que aconteció durante las vistas. De igual manera, la *Sentencia Parcial* adolece de serios errores que nos impiden entender el dictamen apelado. Nos explicamos.

De entrada, advertimos que en la *Sentencia Parcial* el TPI concedió un interdicto permanente sin analizar la prueba presentada al palio de cada uno de los factores reseñados en el derecho precedente. Tampoco hace relación a los hechos probados y al derecho aplicable. De hecho, la manera en cómo se organizó la prueba es sumamente complicada, ya que los números romanos no

---

[18] Véase, además, TPO del 7 de noviembre de 2022, a la pág. 21, líneas 19-21.

concuerdan con los números arábigos que fueron marcados los exhibits.[19] Este foro apelativo hizo un gran esfuerzo para comprender cómo fue organizada la prueba documental admitida y las determinaciones de hechos consignadas, pero ello no fue posible. Nótese que, en el proyecto de sentencia parcial, la prueba documental hace referencia a documentos con números arábigos "de la Carpeta". No obstante, de la TPO surge que los documentos presentados por la parte apelada-recurrida **no fue una carpeta**, sino que fueron presentados de manera individual[20] y marcados como exhibits durante el testimonio del señor Elmer Miranda. Sin duda, es al foro apelado que corresponde nombrar correctamente los exhibits admitidos en evidencia y así consignarlos en su sentencia.

Por otra parte, de las *Determinaciones de Hechos* no surgen los hechos relacionados a los *injunctions* solicitados por las partes, y contiene conclusiones o inferencias no relacionadas a estos. En las notas al calce número tres (3), cuatro (4) y cinco (5), el TPI consignó que tomó conocimiento judicial de la deposición tomada al señor Arnaldo Miranda en otro caso que se dilucida en ese mismo tribunal designado con el alfanumérico BY2021CV03453. En consecuencia, realizó tres (3) determinaciones de hechos, j, l, y m. De igual manera, tomó conocimiento judicial del trámite del expediente electrónico del caso BY2021CV03453, específicamente a las entradas 30, 33 y 42 para determinar que el señor Arnaldo Miranda fue llamado como testigo del allí demandado, el Sr. Carlos Tañón Castro.[21] Sin embargo, de la TPO no surge cuándo dicha deposición fue presentada como evidencia o cuándo se solicitó al foro apelado que tomara conocimiento judicial de la misma. Al

---

[19] A manera de ejemplo, véase la discusión al respecto en la TPO del 7 de noviembre de 2022, a las págs. 23-24, y págs. 38-39.

[20] Véase la TPO del 7 de noviembre de 2022, a la pág. 38, líneas 14-16.

[21] Véase nota al calce núm. 6 y *determinación de hechos* r de la Sentencia Parcial.

respecto, la Regla 201 de las Reglas de Evidencia, 32 LPRA Ap. VI, R, 201, en su inciso (c) dispone que cuando una parte así lo solicita, este debe proveer información suficiente para ello y entonces el tribunal determinará. A su vez, la norma claramente preceptúa que las **partes tendrán derecho a ser oídas en torno a si procede tomar conocimiento judicial**. *Íd.*, inciso (D).

De otro lado, precisa acentuar que la *Sentencia Parcial* tampoco contiene referencias a los Artículos 7.10 y 7.16 de la Ley de Corporaciones de 2009 (Ley núm. 164-2009) ni a su jurisprudencia interpretativa. Al palio de ambas disposiciones es que va dirigida la solicitud de *injunction* solicitada por el apelante-peticionario. De igual manera, no realiza un análisis según lo resuelto por nuestra alta *Curia* en *García v. World Wide Entmt Co.*, 132 DPR 378, 388-389 (1992) para expedir un interdicto permanente e impedir que una parte pueda pactar o hacer negocios con terceros.

De otra parte, el foro primario declaró ha lugar a una solicitud de *non suit* sin haberse celebrado un juicio en su fondo y desestimó la demanda sin elaborar un análisis debidamente fundamentado. En lo aquí pertinente, destacamos que "[l]a desestimación por no haberse presentado prueba que justifique la concesión de un remedio **se produce en juicio** al concluir de presentar la prueba el demandante." Rafael Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed. (2017), San Juan, a la pág. 412. En este sentido, el dictamen apelado no solo adolece de un análisis en cuanto a este aspecto, sino que tampoco incluye los fundamentos para desestimar las alegaciones de la demanda según dispone la Regla 10.2 de las Reglas de Procedimiento Civil, *supra*, y la jurisprudencia interpretativa. Incluso, en las *conclusiones de derecho* no se hace alusión a dicha regla y solo se consignó "... se reitera la desestimación de la demanda..." sin más. Dicha expresión

es propia de la parte apelada-recurrida más no de un foro adjudicador. Sencillamente no podemos revisar una sentencia donde no surge de ella un análisis detallado de las alegaciones de la demanda, ni fundamento por el cual se entiende que estas no justifican la concesión de remedio alguno.

No empece lo anterior, destacamos que entendemos que es una abierta contradicción del TPI haber consignado treinta y cinco (35) "hechos" que, a su entender, constituyen prueba del incumplimiento al deber fiduciario del señor Arnaldo Miranda, ello sin adjudicar asuntos relativos a las reconvenciones que instaron las partes apeladas-recurrida**. Los que, sin duda alguna, están relacionados con lo allí determinado.** Solo indicó que los procedimientos continuarían en cuanto a dichas reconvenciones, las cuales se convertirían "en las demandas originales correspondientes."

Por último, a pesar de que determinó que el señor Arnaldo Miranda fue temerario en la radicación de su demanda, no consignó cuantía en honorarios. Destacamos que, la imposición del pago de honorarios de abogado es imperativa, cuando el tribunal sentenciador concluye que una parte incurrió en temeridad.[22]

En virtud de todo lo antedicho, procede revocar la *Sentencia Parcial* sin discutir ninguno de los errores señalados en los recursos de epígrafe. Recapitulamos que, ante los defectos sustantivos que presenta este dictamen, nos vemos impedidos de ejercer adecuadamente nuestra función revisora.

Reconocemos que la práctica de los tribunales de solicitar a las partes que sometan proyectos de sentencia no es censurable *per se. Román Cruz v. Díaz Rifas*, 113 DPR 500, 508 (1982); *Báez García v. Cooper Labs.*, Inc. 120 DPR 145, 157 (1987). Al contrario, su

---

[22] Véase, *O.E.G. v. Román,* 159 DPR 401, 511 (2003).

utilidad práctica le hace un "instrumento auxiliar para los magistrados del país sobrecargados y agobiados de una carga enorme de causas judiciales". *Báez García v. Cooper Labs.*, Inc., *supra*. Véase, también, *Nieves Díaz v. González Massas*, 178 DPR 820, 853 (2010). Incluso, el Canon 9 de Ética Judicial (4 LPRA Ap. IV-B) autoriza que se soliciten proyectos de sentencia, pues dicho cuerpo normativo los considera como herramientas que alivian a los magistrados del país, quienes tienen una enorme carga de casos. *Báez García v. Cooper Labs., Inc., supra.* No obstante, dichos proyectos **bajo ningún concepto** pueden **sustituir la labor analítica del juez** en su deber de "desentrañar la verdad". *Nieves Díaz v. González Massas, supra*, págs. 853-854; *Malavé v. Hosp. de la Concepción*, 100 DPR 55, 56 (1971). Así, pues, es altamente censurable el que un juez firme "a ciegas" un proyecto de sentencia y sustituya un dictamen emitido en virtud del juicio crítico del juez. *Nieves Díaz v. González Massas, supra*; *Báez García v. Cooper Labs., Inc., supra*, págs. 157-158.

A su vez, recordemos que una parte que presenta un proyecto de sentencia por lo general lo prepara con el deliberado propósito de lograr que su reclamo prevalezca en todos sus aspectos y "salir por la puerta ancha", sin considerar lo que realmente ocurrió en el proceso llevado a cabo ante el tribunal. *Nieves Díaz v. González Massas, supra*; *Román Cruz v. Díaz Rifas, supra*. Es por ello que, el uso de un proyecto de sentencia requiere que los jueces lleven a cabo **un proceso de ponderación sobre el contenido de tal proyecto** y se aseguren que las determinaciones de hechos y las conclusiones de derecho consignadas en su sentencia reflejen fielmente el proceso ventilado ante el tribunal. *In re Aprobación Cánones Ética 2005*, 164 DPR 403, 421-422 (2005). La labor adjudicativa de un juez no es delegable. Tomando conciencia de ello, los jueces deben examinar los proyectos de sentencia que les han

sido sometidos y modificarlos según la prueba presentada y conforme a las disposiciones de derecho aplicables. Después de todo, "[l]a sentencia que firma un juez debe ser el producto honesto de su trabajo, no el de otro". *Román Cruz v. Díaz Rifas, supra,* pág. 508.

En resumen, disponemos que procede la revocación de la *Sentencia Parcial* por no reflejar una evaluación del TPI sobre los asuntos ante su consideración, a tenor con los principios requeridos por el ordenamiento jurídico según explicamos; y devolvemos el caso al foro apelado para que cumpla con lo aquí resuelto. Hacemos énfasis en que de ninguna forma estamos adjudicando los errores argumentados en los recursos de epígrafe, y ni si procede desestimar la demanda instada por el señor Arnaldo Miranda.

**IV.**

Por los fundamentos antes expuestos, revocamos la *Sentencia Parcial* apelada. En consecuencia, se devuelve el caso al foro apelado para la continuación de los procedimientos, conforme a lo aquí dispuesto. El dictamen que a esos efectos emita el tribunal deberá notificarse nuevamente de modo que, la parte que así lo interese, pueda acudir nuevamente a este tribunal a ejercer el derecho de revisión judicial que la ley le otorga.

Advertimos que el Tribunal de Primera Instancia deberá aguardar hasta que se remita el mandato correspondiente a la presente sentencia para que entonces adquiera jurisdicción y actúe de conformidad a lo aquí ordenado. *Colón y otros v. Frito Lays*, 186 DPR 135 (2012), y *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288 (2012).

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones